IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JERRY LEE QUINN                                                                   MOVANT

v.                                                                  No. 3:18CR49-MPM-RP

UNITED STATES OF AMERICA                                          RESPONDENT

## MEMORANDUM OPINION

This matter comes before the court on the motion of Jerry Lee Quinn to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be dismissed under the doctrine of procedural default.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

### Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

In September 2013, the U.S. Marshals Service Gulf Coast Regional Fugitive Task Force was

asked to assist in locating and arresting Jerry Lee Quinn on an outstanding warrant.[1]  On September

11, 2013, the Marshals received information that Quinn might be found in Southaven, Mississippi, at

a house belonging to Tonya Ware.  Randy Buckingham also appeared to live at that address.  Jamaal

Thompson, Deputy U.S. Marshal leading the effort to find Quinn, is from Aberdeen, Mississippi, and

recognized that Quinn, Buckingham, and Ware all had connections to Aberdeen.  Thompson and

other members of his team went to the residence to attempt to locate Quinn.

As members of the arrest team moved into position around the perimeter of the residence,

Thompson and others approached the front of the residence.  However, Thompson and his team

approaching the front were spotted before everyone else was in position.  Quinn ran behind the house

and jumped the fence, escaping, temporarily, into the neighborhood.  A DeSoto County Sheriff's

Deputy who was in the area assisting saw Quinn run across Airways Boulevard and Quinn was

arrested a short time later in a patch of woods near an apartment complex.

Officers at the residence discovered two loaded firearms in a backpack belonging to Quinn,

along with a quantity of marijuana.  Quinn was a previously convicted felon, and thus prohibited

from possessing the firearms.

A Grand Jury indicted Quinn on April 24, 2018, charging him with one count of possession

of a firearm by a prohibited person, one count of possession of marijuana with intent to distribute,

one count of distribution of marijuana, and one count of possession of a firearm in furtherance of a

drug trafficking crime.  Quinn made his initial appearance before this court on July 18, 2018.  Trial

was initially scheduled for September 10, 2018.  However, on August 23, Quinn's counsel filed a

Motion to Continue trial; then, on August 27, 2018, Quinn's counsel filed a Motion for Psychological

---

[1]  The court has drawn the facts and procedural posture of this case from the Government's
response to the instant motion to vacate, set aside, or correct sentence, as they are both well-
documented and uncontested.

Exam. On September 5, 2018, the court granted the Motion to Continue and the Motion for a Psychological Exam. Quinn was sent to the Federal Medical Center of Fort Worth where he was evaluated Dr. Leticia Armstrong and deemed competent to stand trial.

On September 20, 2018, prior to Quinn's competency evaluation, Quinn filed a *pro se* Motion to Dismiss, arguing that the speedy trial act had been violated, citing 18 U.S.C. § 3161(c). The court denied Quinn's Motion to Dismiss by Order dated October 2, 2018, finding that the trial was initially set within 70 days of the defendant's initial appearance and that the speedy trial act calculation had been subsequently tolled due to the request for a psychological exam.

On January 15, 2019, Quinn's counsel filed a Motion for a Hearing to Determine Competency and a second Motion to Continue trial, which at that point was set for February 4, 2019. Trial was continued and a competency hearing was conducted on February 11, 2019, in which the court concurred with and accepted the findings of Dr. Armstrong as to Quinn's competence to stand trial.

After a final continuance at the request of the defendant, trial began on April 1, 2019. Following a two-day trial, Quinn was found guilty on Counts One, Two, and Three – and acquitted on Count Four. He was sentenced on May 20, 2019, and judgment was entered accordingly. Quinn timely appealed, raising various issues, none of which are related to the issues raised in the current petition. On October 14, 2020, the Fifth Circuit affirmed the conviction. Quinn filed his current § 2255 motion on May 5, 2021.

### Quinn's Grounds for Relief

Mr. Quinn has alleged two grounds for relief in his petition, and both appear to arise out of the same concern. He appears to have intermixed questions regarding the statute of limitations and the speedy trial act. While his brief focused on the length of time that passed between the events of September 11, 2013, and his eventual indictment on April 24, 2018, and mentioned potential statute of limitations issues, he cites mainly to 18 U.S.C. § 3161(b). Though § 3161(b) is under the heading

- 5 -

"Speedy Trial," the section actually addresses a different issue than the time for trial – and does not establish a limitations period.

Mr. Quinn did not raise these issues on direct appeal; as such, under the doctrine of procedural default, he may not raise them on collateral review – unless he shows cause for failing to raise the issue on direct appeal – and actual prejudice resulting from application of the default. As discussed below, he has shown neither cause nor actual prejudice to overcome his default – and is thus prohibited from obtaining relief under 28 U.S.C. § 2255.

### The Doctrines of Procedural Default and Procedural Bar

A defendant may not raise issues in his § 2255 motion, other than ineffective assistance of counsel, that he could have raised on direct appeal. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). This doctrine is known as *procedural default.* Similarly, if an inmate has raised an issue on direct appeal, and the Fifth Circuit decided the issue against him, the trial court may not consider it on collateral review: "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). This doctrine is known as *procedural bar*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Default

Whether a § 2255 movant's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief on direct appeal. *See United States v.*

- 6 -

*Flores*, 981 F.2d 231 (5th Cir. 1993) (in the § 2254 context).[2]  To establish prejudice, a movant must show that, but for the alleged error, the outcome of the proceeding would have been different.  *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).  Even if a movant fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice.  To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)).  Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Fairman,* 188 F.3d at 644 (citations omitted).

Quinn raised the following issues on direct appeal:

(1) The district court erred in admitting the prior statement of a witness, Randy Buckingham;

(2) The district court failed to inquire into complaints Quinn made regarding his trial attorney in his effort to obtain new counsel; and

(3) The district court should have found Quinn incompetent to stand trial.

Doc. 65 (Fifth Circuit's Opinion and Final Judgment).  None of the three issues on appeal are related to the

---

[2] The doctrines of procedural default and procedural bar operate in a similar manner, whether during a collateral challenge to a state conviction under 28 U.S.C. § 2254, or to a federal conviction under 28 U.S.C. § 2255:

> The procedural default doctrine applies to state prisoners seeking relief under 28 U.S.C.A. § 2254 and federal prisoners seeking relief under 28 U.S.C.A. § 2255.

§ 24:3.  General principles, Postconviction Remedies § 24:3.  Thus, the court will cite authority in both contexts on this issue.

grounds for relief in the instant motion under § 2255; as such, the motion must be dismissed under the doctrine of procedural default. As the dismissal on procedural grounds is straightforward, the court will forego discussion of the merits of the case.

### Conclusion

In sum, the grounds for relief in the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 will be dismissed under the doctrine of procedural default. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 9th day of August, 2024.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI